**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KETAN DESAI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 09-2957 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CLARK and | : | |
| RS INVESTMENTS, | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2010, upon consideration of Defendants Christopher Clark and RS Investments' Motion to Dismiss, and Plaintiff's response thereto, if any, it is hereby **ORDERED** that Defendants' Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KETAN DESAI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 09-2957 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CLARK and | : | |
| RS INVESTMENTS, | : | |
| | : | |

## MOTION TO DISMISS

NOW COMES Defendants Christopher Clark and RS Investments, by and through their undersigned counsel, and submit this Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted, and in support thereof aver that Plaintiff lacks personal jurisdiction over Moving Defendants, and also that Plaintiff's Amended Complaint fails to state any claim upon which relief can be granted, as further explained in Moving Defendants' attached supporting Brief, the contents of which are incorporated herein by reference.

                                                Respectfully submitted,

                                                GROSS McGINLEY, LLP

BY: _____
                                           Malcolm J. Gross (Pa. ID# 08137)
                                           Samuel E. Cohen (Pa. ID# 204617)
                                           *Attorneys for Defendants*
                                           33 South Seventh Street, PO Box 4060
                                           Allentown, PA 18105-4060

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KETAN DESAI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 09-2957 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CLARK and | : | |
| RS INVESTMENTS, | : | |
| | : | |

**BRIEF IN SUPPORT OF DEFENDANTS CHRISTOPHER CLARK AND
RS INVESTMENTS' MOTION TO DISMISS**

Defendants Christopher Clark and RS Investments (collectively "Defendants"), through its undersigned counsel, submit this Brief in Support of Defendants' Motion to Dismiss.

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On or about July 1, 2009, Plaintiff, proceeding *pro se*, initiated this action by filing a Complaint against Defendants Christopher Clark and RS Investments (collectively "Defendants"), alleging defamation on Defendants' part alleged to have occurred during a Internet blog exchange between the parties on a financial news website. On or about October 14, 2009, Plaintiff filed a Return of Service with the Court, purporting that both Defendants had been properly served on September 30, 2009. The service of process alleged by Plaintiff to have been effected upon both Defendants consisted of a single envelope sent by regular U.S. Mail to RS Investments' office in San Francisco, California, addressed simply to "RS Investments."

On October 27, 2009, Defendants, without consenting to jurisdiction, filed a Motion to Quash Service of Process. On November 20, 2009, the late Honorable Thomas M. Golden

entered an order denying Defendants' Motion without prejudice to Defendants re-filing the motion if Plaintiff failed to make proper service within 30 days. Plaintiff failed to make proper service following the Court's November 20, 2009 order, and therefore Defendants re-filed their Motion to Quash on or about December 31, 2009.

On or about June 24, 2010, having been no efforts by Plaintiff to perfect service, the late Judge Golden entered an Order granting a rule upon Plaintiff to show cause why the matter should not be dismissed for lack of prosecution. Plaintiff purportedly responded with several communications to the Court, none of which were posted on the Court's docket. On or about July 6, 2010, Plaintiff served Defendants with another document Plaintiff purported to be a Complaint which differed in substance from the First Complaint.[1] The Second Complaint did not seem to have been filed with the Court and did not appear on the Court's docket.

On or about August 20, 2010, the Honorable Norma L. Shapiro entered an Order instructing Plaintiff to advise the Court in writing on or before August 31, 2010 as to whether Plaintiff intended to proceed with this action. By letter dated August 24, 2010, Plaintiff informed the Court that he did intend to proceed with this matter. Despite Plaintiff's questionable attempts at service, in light of Plaintiff's August 24, 2010 letter, Defendants filed a Motion for a More Definite Statement on September 1, 2010 so that Defendants could properly assess Plaintiff's claims and determine whether Plaintiff appropriately alleged jurisdiction and/or asserted a valid cause of action against Defendants.

On September 14, 2010, after a status conference on this matter was held to, inter alia, determine the validity of Plaintiff's Complaint, the Honorable Norma L. Shapiro entered an Order granting Defendants' Motion for a More Definite Statement, directing Plaintiff to file an Amended Complaint on or before October 4, 2010.

---

[1] Despite this document being dated July 6, 2009, it was in fact received by Defendants on July 6, 2010.

Plaintiff thereafter filed a document titled Response to Brief Regarding More Definite Statement, and issue which had already been ruled upon by the Court, wherein Plaintiff proceeded to purportedly assert his allegations against Defendants in more detail. By correspondence dated October 18, 2010, the Court informed the parties that Plaintiff's Response to Brief Regarding More Definite Statement (hereinafter "Amended Complaint") was to be treated as Plaintiff's Amended Complaint.

In Plaintiff's Amended Complaint, the allegations of which Defendants accept as true for purposes of their Motion to Dismiss only, Plaintiff contends that he is a board certified internist and rheumatologist with a consulting business with biotechnology, pharmaceutical, and financial companies as his clients. Am. Compl. ¶ 3(a). Plaintiff alleges that in this capacity he writes articles for the online financial website SeekingAlpha.com, a premier and reputed online financial news site frequented by financial analysts, money managers, executives from respective industries, and individual investors. Am Compl. ¶ 3(a).

On May 13, 2008, Plaintiff contends that an article written by Plaintiff was published on SeekingAlpha.com wherein Plaintiff stated a drug named Flurizan, developed for Alzheimer's Disease by Myriad Genetics, would fail in its phase II pivotal trials. Am. Compl. ¶ 3(b). Plaintiff further stated in said article that he had shorted shares of Myriad Genetics at $55/share. Am. Compl. ¶ 3(b). On June 30, 2010, Plaintiff contends that Myriad Genetics announced that Flurizan had failed, prompting Plaintiff to write another article wherein he stated that he "did not think the burn rate (i.e. company expenses) would go down substantially." Am. Compl. ¶ 3(c). Plaintiff next maintains that in response to his articles, Defendant Christopher Clark ("Defendant Clark") of Defendant RS Investments commented on the website and misrepresented Plaintiff's position on two accounts, by: (1) stating that Plaintiff had advised shorting Myriad Genetics'

stock at $41, when in fact Plaintiff had done so at $55; and (2) stating that Plaintiff was skeptical about Myriad Genetics becoming profitable, when in fact Plaintiff wrote that he was skeptical that the burn rate would go down significantly since most of the Flurizan expenses had already taken place, and that there was a pipeline of compounds being developed that would still require expenses.  Am. Compl. ¶¶ 3(d) and (e).  Plaintiff apparently infers these purported misrepresentations from the following comment allegedly written by Defendant Clark:

> Being right or making money.  On May 13th (when you told us so) the stock closed at $41.25.  After the negative news it never broke below $45.  How exactly did you make money on this put trade again?  And you doubt the rationale that they will be profitable in FY09?  They are roughly break even right now and have substantial net outstanding losses.  The diagnostics business is hugely profitable (45% operating margins when not spending on their DTC campaign, 40% when they are) and growing rapidly.  When you have sustainable revenue, cut spending on dead programs and pay no taxes, that falls to the bottom line.  $60mm/45mm shares = $1.33 from cutting that program alone.  Nothing in their pipeline warrants a trial near the scale that they undertook with Flurizan -- that spend level is not coming back.  Stick with collecting degrees, Doc.  Maybe try English next -- one datum leads but many data lead.

Am. Compl. ¶ 3(d).  Plaintiff contends Defendant Clark's statements in this regard constitute libel and slander.  Am. Compl. ¶ 3(e).

Additionally, Plaintiff alleges that Defendant Clark's "gratuitously insulting language and denigration of [Plaintiff's] education has caused great damage to [his] reputation."  Am. Compl. ¶ 3(f).  Plaintiff further contends that Defendant Clark "asked the website to delete [his] rebuttals," thereby leaving Plaintiff with no forum to respond to Defendant Clark's comments.  Am. Compl. ¶ 3(g).  In response to Defendants subsequent efforts to address Plaintiff's concerns, Plaintiff states that Defendants characterized the dispute as "a difference of opinion[s]" when it was rather a "mischaracterization of someone's position."  Am. Compl. ¶ 3(h).  Finally, Plaintiff asserts that Defendants further slandered him when Mr. Ben Douglas called him a "delusional egomaniac" in an email to his employees.  Am. Compl. ¶ 3(i).

As a result of the above alleged conduct, Plaintiff purports to have sustained damages in that (1) his "consulting income has dropped by more than $200,000" although admittedly not all due to Defendant Clark's comments, and (2) he was denied a grant of $150,000 for clinical studies where "one of the comments related to the dispute at hand." Am. Compl. ¶¶ 5(a) and (b). Plaintiff's Amended Complaint also seeks punitive damages. Plaintiff at no point alleges the basis for jurisdiction over Defendants.

Defendants now file a Motion to Dismiss and the within Brief in support thereof pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.

## II. ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURUSANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2).

Plaintiff did not plead sufficient facts for the Court to exercise personal jurisdiction over Defendants. Pursuant to Federal Rule of Civil Procedure 12(b)(2), an action may be dismissed for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden of establishing facts upon which the court may properly exercise jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). After the defendants assert a jurisdictional defense, as Defendants do herein, the burden shifts to the plaintiff to prove jurisdiction is proper. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). At that point, the plaintiff must present a *prima facie* case for the exercise of personal jurisdiction, which requires sworn affidavits or other evidence illustrating a strong connection between the defendants and the forum state. *Carteret Say. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Simeone ex. Rel. Estate of Albert F. Simeone*, 360 F. Supp. 2d 665, 669 (E.D. Pa. 2005).

In diversity cases such as the present matter, the courts perform a two-part inquiry. First, the forum state's long-arm statute must be evaluated to determine whether personal jurisdiction

exists. *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998).  Second, the court must consider whether the exercise of jurisdiction violates the Due Process Clause of the U.S. Constitution.  *IMO Indus., Inc.*, 155 F.3d at 259.  Pennsylvania's long-arm statute reaches the fullest extent of the U.S. Constitution's Due Process Clause, so only a constitutional analysis needs to occur.  *Koresko v. Crosswhite*, Civ. No. 05-CV-4817, 2006 WL 263623, at *3 (E.D. Pa. Feb. 1, 2006).  Personal jurisdiction is divided into two categories, general and specific.  *Gen. Elec. Co.*, 270 F.3d at 150.

General jurisdiction may exist in Pennsylvania when either the defendant's contacts with Pennsylvania are "systematic and continuous" or the requirements of 42 Pa.C.S. § 5301 are satisfied.  *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *see also Koresko*, Civ. No. 05-CV-4871, 2006 WL 263623, at *2.  In order to satisfy the "systematic and continuous" requirement, the plaintiff has the burden of demonstrating that Defendants had "significantly more than mere minimum contacts" with Pennsylvania.  *Provident Nat'l Bank v. Cal Fed. Say. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  Under 42 Pa.C.S. § 5301(a)(1), Pennsylvania courts have general jurisdiction over a party when:  (i) the party is present in Pennsylvania at the time process is served; (ii) the party is domiciled in Pennsylvania at the time process is served; or (iii) the party consents (to the extent authorized by consent).  42 Pa.C.S. § 5301(a)(1).

With regard to specific jurisdiction, "[i]n order to comport with due process, a nonresident defendant must have sufficient minimum contacts with the forum state so 'that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Barrett, M.D. v. The Catacombs Press*, 44 F. Supp. 2d 717, 724 (E.D. Pa. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316)).  A court generally applies two standards in deciding whether the

minimum contacts test has been met for specific jurisdiction. *Catacombs Press*, 44 F. Supp. 2d at 724. "First, the plaintiff must show that the "defendant has the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into court there.'" *Id.* (quoting *Pennzoil Prods. Co. v. Colelli & Associates*, 149 F.3d 197, 201 (3d Cir. 1998)). Constitutionally sufficient minimum contacts requires the plaintiff to provide evidence that his cause of action is related to or arises out of the defendant's contacts with the forum, and that the defendant purposefully availed itself o the privilege of conducting business in the forum state, thus invoking the benefit and protection of the laws. *Toys "R" Us, Inc.*, 318 F.3d at 451. "Second, a court must also inquire whether 'the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Catacombs Press*, 44 F. Supp. 2d at 724 (citing *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 476 (1985).

In the present matter, Plaintiff has not provided sufficient facts, or any facts for that matter, to establish general jurisdiction over Defendants. It is clear from Plaintiff's submissions that purport to demonstrate service that Defendants are citizens of the State of California. Plaintiff's Amended Complaint is silent as to whether Defendants maintained "systematic and continuous" contacts with Pennsylvania. Rather, the allegations relate to a single act and/or incident purportedly committed by Defendants over the Internet on a website which is not alleged to have any connection with the Commonwealth of Pennsylvania. Similarly, Plaintiff asserts no allegations to establish the Court's general jurisdiction over the Defendants pursuant to 42 Pa.C.S. § 5301, as Defendants were at no time present in Pennsylvania, were not domiciled in Pennsylvania when purportedly served, nor did they consent to Jurisdiction.[2] Accordingly,

---

[2] Counsel for Defendants entered their special appearances in this matter for the sole purpose of challenging service of process and subsequently responding to a comprehensible Complaint and in no way consented Defendants to jurisdiction in Pennsylvania. *See* Entry of Appearances of Malcolm J. Gross and Samuel E. Cohen (Docket No. 3 and 4 respectively).

Plaintiff has failed to establish facts to warrant the Court's exercising of general jurisdiction over Defendants.

Likewise, Plaintiff has not provided sufficient facts, or any facts for that matter, to establish specific jurisdiction over Defendants. Again, the allegations in Plaintiff's Amended Complaint relate to a single act and/or incident purportedly committed by Defendants over the Internet on a website with no alleged ties to Pennsylvania. There are no further allegations or references to any purported acts and/or omissions by Defendants suggestive of minimum contacts amounting to purposeful availment of the privilege of acting within Pennsylvania. Moreover, none of the alleged defamatory remarks were specifically directed towards Plaintiff in his capacity as a Pennsylvania nor are the remarks alleged to have specifically targeted internet users in Pennsylvania. *See Catacomb Press*, 44 F. Supp. 2d at 729 (finding that personal jurisdiction did not exist over an out-of-state defendant website alleged to have defamed the plaintiff when, *inter alia*, the plaintiff failed to point to any defamatory statements that attacked the plaintiff in his capacity as a Pennsylvania professional or any postings by the defendant that intended to target Internet users in Pennsylvania specifically). Accordingly, Plaintiff has failed to establish facts to warrant the Court's exercise of specific jurisdiction over Defendants, and therefore Plaintiff's Amended Compliant must be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

**III. ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURUSANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and therefore must be dismissed. When reviewing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must be viewed in the light most favorable to the plaintiff and all its well-pleaded allegations must be accepted as true. *Erickson v. Pardus*, 551

U.S. 89, 93-94, 127 S.Ct. 2197 (2007). A court must determine whether the facts as alleged in the complaint are "sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Additionally, where as here, the plaintiff is proceeding *pro se*, the complaint is to be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, even a *pro se* complaint must be dismissed if it does not allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Thakar v. Tan*, 372 Fed. Appx. 325, 328 (3d Cir. 2010).

Plaintiff's defamation claim is a state law claim governed by statute in Pennsylvania. 42 Pa.C.S. § 8343(a). To state a claim for defamation, a plaintiff must plead (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff form its publication; and (7) abuse of any conditional privilege. *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999) (citing 42 Pa.C.S.§ 8343(a)). Before a defamation action moves forward, "[i]t is the function of the court to determine whether the challenged publication is capable of a defamatory meaning." *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215-16 (Pa. 1981). A statement has a defamatory meaning if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004). A defamatory statement "tends to blacken a person's reputation

and expose him to public hatred, contempt or ridicule." *Id.* The Pennsylvania Supreme Court has held that "[i]t is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community or respectable society." *Id.* (quoting *Scott-Taylor, Inc. v. Stokes,* 425 Pa. 426, 229 A.2d 733, 734 (1967)). Additionally, it is well established under Pennsylvania law that a statement of opinion cannot be defamatory. *Kryeski v. Schott Glass Techs.*, 626 A.2d 595, 601 (Pa. Super. 1993), appeal denied, 639 A.2d 29 (Pa. 1994).

In the present matter, the statements Plaintiff complains about are not defamatory as a matter of law. Plaintiff contends that Defendant Clark stated the following in response to an article posted by Plaintiff on the website SeekingAlpha.com:

> Being right or making money. On May 13th (when you told us so) the stock closed at $41.25. After the negative news it never broke below $45. How exactly did you make money on this put trade again? And you doubt the rationale that they will be profitable in FY09? They are roughly break even right now and have substantial net outstanding losses. The diagnostics business is hugely profitable (45% operating margins when not spending on their DTC campaign, 40% when they are) and growing rapidly. When you have sustainable revenue, cut spending on dead programs and pay no taxes, that falls to the bottom line. $60mm/45mm shares = $1.33 from cutting that program alone. Nothing in their pipeline warrants a trial near the scale that they undertook with Flurizan -- that spend level is not coming back. Stick with collecting degrees, Doc. Maybe try English next -- one datum leads but many data lead.

Am. Compl. ¶ 3(d). On its face, these statements are clearly Defendant Clark's opinion. Notwithstanding, even assuming Plaintiff's contention that the above statements are "mischaracterizations" (Am. Compl. ¶ 3(h)) that misrepresented his position by: (1) stating that Plaintiff had advised shorting Myriad Genetics' stock at $41, when in fact Plaintiff had done so at $55; and (2) stating that Plaintiff was skeptical about Myriad Genetics becoming profitable, when in fact Plaintiff wrote that he was skeptical that the burn rate would go down significantly since most of the Flurizan expenses had already taken place, and that there was a pipeline of

compounds being developed that would still require expenses (Am. Compl. ¶¶ 3(d) and (e)), such "mischaracterizations of someone's position" (Am. Compl. ¶ 3(i) in no way blackened Plaintiff's reputation, exposed him to public hatred, contempt or ridicule, or otherwise grievously fractured Plaintiff's standing in the community, as Plaintiff's Amended Complaint makes no allegations of such.  *See Tucker*, 848 A.2d at 124.

Moreover, while Plaintiff arguably alleges some of the elements necessary to support a cause of action for defamation, his Amended Complaint fails to allege all required elements. *See* 42 Pa.C.S.§ 8343(a). Specifically, Plaintiff's Amended Complaint fails to state with particularity the recipients of the alleged defamatory comments by Defendants, fails to state that any recipients understood the remarks to be a reference to Plaintiff, and most significantly fails to allege specific harm attributable to the defamation exclusively or specific harm that is otherwise calculable.  In fact, Plaintiff contends that he sustained damages in two forms:  (1) his consulting income dropped by more than $200,000, a drop Plaintiff does not claim "to be all due to [Defendant] Clark," but rather that he claims merely "had a not insignificant effect;" and (2) he was denied a $150,000 grant from the National Institutes of Health for clinical studies "and one of the comments related to the dispute at hand." Am. Compl. ¶ 5(a) and (b).  The plaintiff must show "actual and concrete damages" capable of being estimated in monetary loss. *See Beverley Enters., Inc.*, 182 F.3d at 188; *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) ("Special harm is specific monetary or out-of-pocket loss.").  Accordingly, Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and therefore must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and/or for failure to state a claim on which on which relief may be granted.

          Respectfully submitted,

          GROSS McGINLEY, LLP

BY: _____
        Malcolm J. Gross (Pa. ID# 08137)
        Samuel E. Cohen (Pa. ID# 204617)
        *Attorneys for Defendants*
        33 South Seventh Street, PO Box 4060
        Allentown, PA 18105-4060

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KETAN DESAI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 09-2957 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER CLARK and | : | |
| RS INVESTMENTS, | : | |
| | : | |

**CERTIFICATE OF SERVICE**

SAMUEL E. COHEN, ESQUIRE, hereby certifies that she served a true and correct copy of the DEFENDANTS CHRISTOPHER CLARK AND RS INVESTMENTS' MOTION TO DISMISS, upon the following person listed below, by first class U.S. mail, postage prepaid, on November 8, 2010:

        KETAN DESAI
        1175 SPRING ROAD
        EASTON PA 18040

   *Pro Se*

        GROSS McGINLEY, LLP

BY: _____
        SAMUEL E. COHEN, ESQUIRE
        Pa ID# 204617
        33 South Seventh Street, PO Box 4060
        Allentown, PA 18105-4060
        Ph. 610-820-5450; Fax: 610-820-6006

Dated: November 8, 2010