IN THE UNITED STATES DISCTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KETAN DESAI

                    Plaintiff

Vs

CHRISTOPHER CLARK and
R. S. INVESTMENTS



                    Defendants

CIVIL ACTION NO: 09-2957

This is in response to the defendants motion of Nov 8, 2010 to dismiss the case due to
A: Lack of personal jurisdiction.
B:  Failure to state claim.

The motion is very puzzling, since the points raised were addressed in the Amended Complaint.  This motion to quash the defendants motion addresses the two in question, and will not address other points raised in the letter but not included in the motion.

A: <u>Lack of personal jurisdiction</u>.  In the motion, on page 7, item II, paragraph III, the defendants claim "the plaintiff must present ......sworn affidavits <u>or other evidence</u> illustrating a strong connection between the defendants and forum state".  As mentioned in the Amended Complaint, Mr. Clarks comments were published in a very widely read internet site, SeekingAlpha.  Do the defendants claim that except the plaintiff, no one else in Pennsylvania reads SeekingAlpha? <u>The fact that the comments were published over the Internet in a site which is widely read leads to a reasonable conclusion that the comments were read in Pennsylvania as well.  Mr. Clark had been posting in SeekingAlpha for well over a year, during which period his comments were read all over the world, including Pennsylvania.  Thus, he had a systemic and continuous contact with Pennsylvania</u>.  In addition, I pointed out that I lost a significant income <u>in Pennsylvania</u> as well as <u>an NIH grant in Pennsylvania</u> due to the actions of the defendants.  This is evidence of the strong connection between the defendants and the forum state.

**B. Failure to state claim**: The arguments for failure to state claim in Item III in the letter by the defendants (pages 10, 11, and 12) in fact support my position and claims. For example, on page 10, third paragraph, every single requirement was met in the Amended Complaint. Similarly, on page 12 paragraph 1, the requirement by the US Supreme Court has been met when I demonstrated in the Amended Complaint that not only did I sustain monetary damage but "suffered the kind of harm which grievously fractured his standing in the community" as reflected in the comments in the NIH grant. Finally, on page 13, second paragraph, the motion clearly ignores the Amended Complaint, wherein specific damages have been demonstrated in monetary terms as well as in reputation. This is in line with the US Supreme Courts' directive.

A fair case has been made against Mr. Clark. If the defendants argue that a similar case has not been made against RS Investments, my argument is that since Mr. Clark is was an employee of RS Investments, made his comments using the company computer during working hours, remains an employee of RS Investments, and continues to be supported in this litigation by RS Investments, the company bears implied risk. If RS Investments wishes to dissociate itself from Mr. Clark's comments, I am willing to drop the case against RS Investments but intend to continue the case against Mr. Clark. Regarding Mr. Clark, several case studies below support my position.

**CASE 1**: A New Jersey appellate court recently found that a out-of-state defendant can be subject to jurisdiction in New Jersey if the defendant targets his or her Internet statements at the state. The defendant in Goldhaber v. Kohlenberg was a California resident who made disparaging comments about the plaintiffs, both New Jersey residents, on an Internet newsgroup devoted to providing information about cruises and cruise ships. The defendant, who otherwise had no contacts with New Jersey, posted derogatory messages about the plaintiffs on the newsgroup.

**CASE 2**: The U.S. Supreme Court in Calder v. Jones (465 U.S. 783) found that the Florida-based National Enquirer was subject to a defamation claim by the actress Shirley Jones in California because the magazine knew its statements would impact Ms. Jones in California, where it also had its largest circulation. This case gave a test to find personal jurisdiction: intentional and allegedly tortious conduct with the result that the plaintiff is injured there.

**CASE 3**: In Tamburo v. Dworkin, 2010 WL 1387299 (C.A.7 April 8, 2010), John Tamburo and his software business filed suit against multiple defendants in the United States, Canada and Australia. The case was initially dismissed by a lower court, but reversed by an appellate court.

The court said personal jurisdiction was appropriate for the U.S. and Canadian

defendants because they were accused of disseminating information about Tamburo widely through websites. This is enough for personal jurisdiction under the "express aiming" test.

The court examined whether jurisdiction over the individuals would "offend traditional notions of fair play and substantive justice." It found that hearing the case in Illinois would not be unfair. Illinois has a strong interest in providing a forum for residents like Tamburo to settle disputes, whereas other states have no substantial interest in the case. Thus, jurisdiction in Illinois is fair. For all of these reasons, the Seventh Circuit upheld the dismissal of the antitrust claims and reversed the dismissal of the tort-law claims against the U.S. and Canadian defendants.

CASE 4: In Kauffman Racing Equip. L.L.C. v. Roberts, the defendant is alleged to have posted disparaging statements on the public forum areas of an Internet sites with the intention of damaging an Ohio-based company's business and personal reputation. The Court's 4-2 majority decision, which affirmed a ruling of the 5th District Court of Appeals, was authored by Justice Paul E. Pfeifer.

In 2006 Kauffman Racing Equipment (KRE) of Knox County, which specializes in the manufacture and sale of race car parts, sold an auto engine block to a Virginia resident, Scott Roberts, who had never been to Ohio.  Eight months later, Roberts called KRE to complain that the engine block was defective. KRE owner Steve Kaufman had Roberts ship the block back to Ohio, where his examination revealed that the block had been modified by Roberts, a fact that Roberts subsequently admitted. KRE declined to buy back the engine block because of the modifications made by Roberts, and shipped the block back to him.

During a two-month period following KRE's refusal to replace the engine block, Roberts posted a number of comments that were highly critical of KRE products and business practices and of Steve Kauffman personally on the public-forum pages of several Internet sites dedicated to automobile racing equipment and related subjects, according to information released by the Court.  These included postings on the Web sites PerformanceYears.com and PontiacStreetPerformance.com, and in an item description on the internet auction Web site, eBay Motors. In some of those comments, Roberts indicated that it was his intention to get even for his economic loss on the engine block transaction by negatively impacting KRE's reputation via his postings on Web sites frequented by car racing enthusiasts.

After receiving inquiries from at least five Ohio residents triggered by Roberts' Web postings, KRE filed suit against Roberts in the Knox County Court of Common Pleas, alleging that Roberts had injured the company's reputation and business by posting false and malicious statements on the Internet and seeking damages.

Roberts filed a motion to dismiss KRE's claims against him on the basis that an Ohio trial court could not exercise personal jurisdiction over him because he was a Virginia resident with no legal presence in Ohio. The trial court granted Roberts' motion to dismiss based on lack of personal jurisdiction.

KRE appealed. The 5th District Court of Appeals reversed the trial court's decision, finding that Ohio's "long arm" statute conferred jurisdiction on the trial court to hear KRE's complaint. In the majority opinion affirming the judgment of the court of appeals, Justice Pfeifer wrote that KRE had established both of the necessary elements that: 1) Ohio's long-arm jurisdiction statute and supporting civil rule confer jurisdiction over Roberts on the trial court; and 2) exercising that jurisdiction to require Roberts to answer for his alleged tortious conduct in an Ohio court does not violate his constitutional right to due process. "Roberts contends that Ohio's long-arm statute does not confer personal jurisdiction because he did not direct the alleged tortious statements to Ohio or publish them here," wrote Justice Pfeifer "Despite the fact that Roberts's publication of his comments did not emanate from Ohio, those comments were received in Ohio. ... Roberts posted his allegedly defamatory statements on the Internet, ostensibly for the entire world to see. How much of the world saw the comments is unknown; but we do know that at least five Ohioans saw Roberts's statements. The comments were thus published in Ohio."

I request that the motion by the defendants be denied.

Sincerely

Ketan Desai
November 15, 2010

FILED

NOV 16 2010

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## CERTITICATE OF SERVICE

This certifies that on Nov 15, 2010, I served by first class mail and by fax on Nov 16 a copy of this motion on counsel for each defendant, Mr. Samuel Cohen and Mr. Malcolm Gross, 33 South Seventh Street, Allentown, PA, 18105